**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-3017-17T2

FRANK S. PROSCIA, II,

     Petitioner-Respondent,

v.

ADVANCED BIOTECH,

     Respondent-Appellant.

_____

Submitted January 24, 2019 – Decided April 26, 2019

Before Judges Alvarez and Mawla.

On appeal from the New Jersey Department of Labor and Workforce Development, Division of Workers' Compensation, Claim Petition No. 2015-029305.

The Chartwell Law Offices, LLP, attorneys for appellant (Brittany Atkinson, on the brief).

Green, Jasieniecki & Riordan, LLC, attorneys for respondent (John J. Jasieniecki, of counsel and on the brief).

PER CURIAM

Respondent Advanced Biotech (AB), petitioner Frank S. Proscia's former employer, appeals a February 21, 2018 workers' compensation award of temporary disability benefits. We now affirm.

Petitioner worked at AB's site in Paterson, from the time he began his employment in 2005, until 2012, when the facilities were relocated to a new location. AB is a chemical company that manufactures and sells raw natural flavor ingredients. According to the testimony of both experts, the list of over 1000 chemicals to which petitioner was exposed while working for AB includes several suspected carcinogens.

During the course of his employment, petitioner dealt with occasional flooding in the Paterson building, requiring him to wear waders to walk through the space in order to secure manufacturing materials, including drums filled with chemicals. As a working manager, he examined and sampled many containers as they arrived, and oversaw the "pouring" of those chemicals by others. Petitioner's desk at the Paterson site was some fifteen feet away from the sealed-off storage room where the drums of chemicals were stored.

Petitioner also addressed multiple spills of hazardous chemicals over the years, and at times, the chemicals would adhere to his skin and clothing. The evening after a spill of acetic acid in February 2011, petitioner was hospitalized

2

because of breathing difficulties.  Petitioner worked at AB until October 2013.
He was diagnosed with colorectal cancer in or about March 2015.

Petitioner's medical expert was qualified in the field of environmental and
occupational health medicine.  Based on her review of petitioner's entire medical
history, and medical conditions, she testified that the harmful chemical exposure
at his place of work was a material factor contributing to his cancer, and that the
exposure had aggravated, exacerbated, and accelerated the disease.  She
testified:

> [petitioner] was exposed to multiple chemicals, a
> number of which are known to be carcinogenic.
>
> One of the most important ones that's known to
> be carcinogenic is Acetaldehyde.  That is known to be
> an IARC, International Agency for Research on Cancer
> designated Class 1 carcinogen.  That is the highest level
> of rating that you can have for a carcinogen.  It's as bad
> as something like asbestos in causing cancer.
>
> . . . .
>
> In addition to those known cancer-causing
> chemicals, he was also exposed to other hazardous
> toxic chemicals.  For example, Diacetyl.  That's known
> to be damaging to the lung, so he had a lot of chemical
> exposures that are known to be toxic to humans.

She also testified that some eleven to fifteen percent of colorectal cancers are
attributed to workplace chemical exposure, and as established by DNA testing,

3

petitioner's body could not detoxify. We quote portions of her report in the relevant section of the opinion.

Further, petitioner's expert categorized his cancer as stage three or four, unequivocally stated he could not return to work, and concluded he needed further treatment and evaluation on an ongoing basis. Petitioner was only forty-two, while ninety percent of colon cancers occur in persons fifty years of age or older. He had no history of alcohol abuse, smoking, or a family history of cancer. Although the expert could not say there was a direct causal relationship between the cancer or petitioner's daily contact with hazardous chemicals at work, her opinion to a medical certainty was that the exposure was likely a material contributing factor.

AB's medical expert, an oncology doctor, disagreed that Acetaldehyde caused cancer, since he found no studies that showed a direct connection. He conceded that it was a known contributor to cancer. Having reviewed the list of chemicals to which petitioner was exposed over the years, AB's expert agreed that at least some "would be considered carcinogenic." He disagreed that petitioner could not return to work, as his cancer was stable and only had a likelihood of recurrence of fifteen percent.

In his decision, rendered from the bench, the judge stated:

[I]f in the course of [petitioner's] work he is exposed to something that more probable than not causes him harm, he's entitled to have that harm covered, and there's a recognition implicit in that that we are not going to come forward with any certitude, but this man has colorectal cancer. There's no question about that.

There is in his history presented no alternative cause. There is the certitude that he was exposed to a great deal of chemicals that could have harmful effects including causing cancer. That to me is sufficient for . . . a finding that it is more probable than not that his exposure on this job caused the cancer he presently experiences, and I so find.

The respondent is responsible for treatment going forward.

AB on appeal raises the following points:

POINT I

The finding of causal relationship is not based on sufficient credible evidence.

POINT II

Regardless of the compensability of this claim, the [j]udge's finding of entitlement to temporary disability benefits was in error.

POINT III

[AB] was unfairly prejudiced as the [c]ourt did not afford due process.

We consider AB's third point to be so lacking in merit as to not warrant discussion in a written opinion.  R. 2:11-3(e)(1)(E).

I.

Appellate review of a workers' compensation judge's decision is limited to whether the conclusion "could reasonably have been reached on sufficient credible evidence present in the whole record[.]"  Hodgdon v. Project Packaging, Inc., 214 N.J. Super. 352, 360 (App. Div. 1986) (citing DeAngelo v. Alsan Masons, Inc., 122 N.J. Super. 88, 89-90 (App. Div. 1973).  We give "due regard" to the compensation court's specialized expertise, as well as its ability to judge witness credibility.  Close v. Kordulak Bros., 44 N.J. 589, 599 (1965).

Under the New Jersey Workers' Compensation Act (the Act), an employee may recover from an injury "arising out of and in the course of his employment[.]"  N.J.S.A. 34:15-1.  The "arising out of" portion refers to causation, while "course of employment" refers to "the time, place, and circumstances of the accident in relation to the employment."  Valdez v. Tri-State Furniture, 374 N.J. Super. 223, 232 (App. Div. 2005) (citing Coleman v. Cycle Transformer Corp., 105 N.J. 285, 288 (1986).  Thus, compensability relies on a causal connection between the employment and the injury.  Id. at 235 (citing Coleman, 105 N.J. at 290).  The controlling test requires the factfinder to

6

determine "whether it is more probably true than not that the injury would have occurred during the time and place of employment rather than elsewhere." Id. at 236 (quoting Coleman, 105 N.J. at 290-91).

Pursuant to N.J.S.A. 34:15-31, an employee may also recover for diseases arising out of and in the course of employment, "which are due in a material degree to causes and conditions which are or were characteristic of or peculiar to a particular trade, occupation, process or place of employment." In order to establish an occupational disease, an employee typically must prove both legal and medical causation. Lindquist v. City of Jersey City Fire Dep't, 175 N.J. 244, 259 (2003). A worker must prove that "the exposure to a risk or danger in the workplace was in fact a contributing cause of the injury." Ibid.

Further, "[d]irect causation is not required; proof establishing that the exposure caused the activation, acceleration or exacerbation of disabling symptoms is sufficient." Ibid. If the employee proffers a medical expert to prove causation, the scientific theory will be considered sufficiently reliable "if it is based on a sound, adequately-founded scientific methodology involving data and information of the type reasonably relied on by experts in the scientific field." Id. at 262 (quoting Rubanick v. Witco Chem. Corp., 125 N.J. 421, 449 (1991)). Finally, the employee must demonstrate by a preponderance of the

evidence that workplace environmental exposure was "a substantial contributing cause of . . . [the] occupational disease." Id. at 263.

With regard to temporary disability benefits, an employee who suffers a work-related injury may recover under the Act until "the employee is able to resume work and continue permanently thereat or until he [or she] is as far restored as the permanent character of the injuries will permit, whichever happens first." Cunningham v. Atl. States Cast Iron Pipe Co., 386 N.J. Super. 423, 427-28 (App. Div. 2006) (alteration in original) (internal quotations omitted) (quoting Monaco v. Albert Maund, Inc., 17 N.J. Super. 425, 431 (App. Div. 1952)); N.J.S.A. 34:15-38.

## II.

We are satisfied that sufficient credible evidence supports the judge's decision. Compensability requires a causal connection between employment and injury. Valdez, 374 N.J. Super. at 235 (citing Coleman, 105 N.J. at 290); see also N.J.S.A. 34:15-1. The judge found, based on petitioner's expert's testimony, that it was more probably true than not that the injury occurred as a result of petitioner's daily contacts with hundreds of hazardous chemicals over the course of years at his place of employment. Thus, the judge reasonably concluded petitioner established by a preponderance of the evidence that his

workplace environmental exposure was "a substantial contributing cause of . . . [the] occupational disease." Lindquist, 175 N.J. at 263. Contrary to AB's arguments, a petitioner need not prove direct causation. See id. at 259. "[P]roof establishing that the exposure caused the activation, acceleration or exacerbation of disabling symptoms is sufficient." Ibid.

AB's expert acknowledged some of the chemicals on the lengthy list of items to which petitioner was exposed over the years were known to be hazardous and carcinogenic. The workers' compensation judge was in the best position to evaluate the medical experts' testimony. See id. at 260-61. He could, at his option, decide to give petitioner's expert testimony greater weight than the expert who testified on behalf of AB.

## III.

AB also challenges the award of temporary disability benefits. We are satisfied that given petitioner's stage of cancer, the physical consequences of the disease and the treatment, and the possibility that it has metastasized, fully support the judge's conclusion. It too was also based on sufficient credible evidence in the record.

Petitioner faces significant physical struggles post-chemotherapy. As his expert said in her report, he is simply unable to return to work at this time:

> [Petitioner's] colorectal cancer disease has unfortunately progressed with a worsening prognosis although further treatment options may be available to him through his specialist providers. As such, he has not yet achieved maximum medical improvement, and further ongoing medical treatment for colorectal cancer remains a medical necessity for [petitioner].
>
> The severity of his colorectal cancer condition (Stage IV) preclude[s] [petitioner] from return[ing] to work at the present time. Given the relatively poor prognosis associated with his severe disease, the likelihood that he will recover from his condition to the extent that he will be able to return to work in any capacity in the foreseeable future is low. As such he is deemed as permanently and totally disabled from the time of his colorectal cancer diagnosis to the present time, and going forward.

The judge could, at his option, reasonably rely on the medical report. See Lindquist, 175 N.J. at 260-61. It was "based on a sound, adequately-founded scientific methodology involving data and information of the type reasonably relied on by experts in the scientific field." Id. at 262 (quoting Rubanick, 125 N.J. at 449). Under the Cunningham standard, petitioner has established by a preponderance of the evidence that his current condition prevents him from returning to work. See 386 N.J. Super. at 427-28. The judge's decision to grant temporary benefits from the date the motion was filed was not error.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-3017-17T2